IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                                20-CR-123-JLS

RAMINDERJIT ASSI,

          Defendant.

---

### GOVERNMENT'S RESPONSE TO
### DEFENDANT ASSI'S SUPPLEMENTAL PRETRIAL MOTION

THE UNITED STATES OF AMERICA, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, Michael J. Adler, Assistant United States Attorney, of counsel, hereby files its response to defendant RAMINDERJIT ASSI's supplemental pretrial motion (Doc. 19).

### I.    PROCEDURAL HISTORY

The procedural history in this matter was addressed in the government's original response, Doc. 14. Since that filing, the posture of the case has adjusted in so far as new counsel was retained. Specifically, on July 12, 2022, the defendant advised he would like to retain new counsel. On July 20, 2022, Robert C. Singer, Esq. represented he had been retained, and requested until September 2, 2022 to file additional pretrial motions. On August 31, 2022, Mr. Singer sent an e-mail to the undersigned requesting numerous documents listed within nine bullet points. Specifically, he requested the following:

- Copies of any report(s) documenting efforts of the United States Government ("USG") to obtain custody/extradition of Mr. Assi from the Government of Canada, to include any attempts by USG authorities to locate Mr. Assi in Canada or elsewhere, to include by running internet searches, credit checks, interviewing parents, relatives, and friends, etc.

- Copies of any communications between the USG and the Government of Canada discussing extradition of Mr. Assi to the United States of America, to include any requests for extradition and/or the location of Mr. Assi. Please note that this request asks for the specific information the USG provided the Government of Canada and its authorities regarding Mr. Assi, to include his name, date of birth, last know address, last known telephone number, last known email address, last known occupation, and/or Mr. Assi's associates/accomplices.

- Copies of any filing or notices submitted by the USG to Interpol, TECS, NCIC, regarding the charges in this matter

- Copies of any provisional arrest warrant(s) filed by the USG in Canada regarding Mr. Assi and the charges in this matter

- The name(s) and agency(ies) of any law enforcement authority tasked with locating and/or extraditing Mr. Assi

- A copy of the letter to you from Department of Justice's Office of International Affairs regarding extradition in Mr. Assi's case

- Copies of any interagency and intra-agency messages/correspondence/communications within the Department of Justice ("DOJ") (and any of the subordinate agencies that report to DOJ) and between DOJ and any other federal, state, local, or international law enforcement agency as well as the United States Department of State (and any of its embassies and consular offices), the Department of Homeland Security (and any of the subordinate agencies that report to DHS) regarding Mr. Assi and the USG's efforts to locate, arrest and extradite Mr. Assi

- A copy of the extradition treaty between the USG and the Government of Canada in effect in 2019 to present

- Copies of any DOJ memoranda or internal memoranda within the USAO-WDNY discussing the impact of COVID-19 on international extradition efforts in Canada and how DOJ personnel should respond to these impacts, to include whether to delay the filing of an indictment

The next day, on September 1, 2022, defense counsel filed a motion requesting an extension of time to submit his supplemental motions to September 23, 2022.  Although the undersigned consented to this extension, it was noted to defense counsel that I would be engaged in a lengthy trial commencing on September 19, 2022.[1]  That trial is presently ongoing.

On or about October 4, 2022, at the undersigned's request, my supervisor provided to defense counsel copies of the following documents:

a. Homeland Security Investigations TECS record for the defendant;

b. Homeland Security Investigations Fugitive Report for NCIC pertaining to the defendant;

c. Correspondence between Michael Balint (Detective for Toronto Police Service) and Homeland Security Investigations Special Agent Michael Dombek from the day prior to the defendant's entry into the United States; and

d. An unofficial consolidated version of the Canadian extradition treaty with the United States.

None of these items were discoverable under Rule 16.  Nonetheless, they were provided to assist the defendant.  The undersigned previously informed Mr. Singer that most of his requests either did not exist or were not discoverable.

---

[1] The trial was later adjourned by two days to September 21, 2022.

3

## II.     LEGAL DISCUSSION

A.     **DEFENDANT'S REQUEST FOR ADDITIONAL DISCOVERY**

The law regarding discovery was addressed in the government's original motion response. The defendant now claims that the government has failed to comply with Rule 16(a)(1)(E). Although the government has now supplied limited records to the defendant, none of the records enumerated in Mr. Singer's e-mail were actually discoverable. Where evidence neither belongs to the defendant nor is intended to be used in the government's case-in-chief, an item must be material to preparing the defense to be discoverable. Fed. R. Crim. P. 16(a)(1)(E). The defendant argues that these items are material because "establishing that the government failed to do anything to secure Mr. Assi will shift the quantum of proof in Mr. Assi's favor for purposes of the motion to dismiss." Doc 19-1 at 9. It is unclear to which "quantum of proof" the defendant refers. As noted in the government's original response, the defendant cannot trigger the Barker analysis at all as only one day elapsed after the indictment was unsealed. See United States v. Moreno, 789 F.3d 72, 78 (2d Cir. 2015) ("The Sixth Amendment . . . is triggered by arrest, indictment, or other official accusation, . . . or (in cases such as this) **by the unsealing of a sealed indictment**.") (internal citation omitted) (emphasis added). See also United States v. Smith, 277 F. Supp. 3d 405, 413 n.6 (W.D.N.Y. 2016) (District Court agreeing with government argument that commencement of delay began with unsealing of indictment). There is no "quantum of proof" here beyond that fact. The

defendant cannot meet this burden. There is no depth of fishing expedition that can alter this outcome.

Between his original motion and his supplemental motion, the defendant has failed to cite any law that would allow the Court to consider the period of 19-month delay from the return of indictment to the defendant's arrest rather than the 1 day between the unsealing of the indictment and his arrest. Nonetheless, the government already conceded that, arguendo, if the 19-month period were the relevant period of delay, this would qualify as "presumptive prejudice." See Doc 14 at 5. As such, even in the government's hypothetical scenario in which the law in Moreno and Smith are disregarded, there is still no dispute regarding a shift in analysis.

What the defendant seems to mean is that these documents **might** contain information that he could use to attack the second Barker factor: the reason for delay. Even if the Barker factors were triggered (which they are not) and if the government conceded the second factor (which it does not), the second factor alone cannot overcome the defendant's inability to contest the first and forth prongs: the length of delay and the prejudice of the delay. As such, there is simply nothing material about the defendant's broad "discovery" request.

To reiterate arguments the government made previously, even under a proper Barker analysis, the first prong (the length of delay) fails to justify a speedy trial dismissal. As the government argued originally, numerous cases in the Second Circuit have found no speedy trial violation for longer periods than 19 months. See, e.g., United States v. McGrath, 622

F.2d 36 (2d Cir.1980) (24 months); United States v. Lane, 561 F.2d 1075 (2d Cir.1977) (58 months); United States v. Cyphers, 556 F.2d 630 (2d Cir.), cert. denied, 431 U.S. 972 (1977) (33 months); United States v. Mejias, 552 F.2d 435 (2d Cir.), cert. denied, 434 U.S. 847 (1977) (21 months); United States v. McQuillan, 525 F.2d 813 (2d Cir.1975) (26 months); United States v. Lasker, 481 F.2d 229 (2d Cir.1973), cert. denied, 415 U.S. 975 (1974) (2 years); United States v. Infanti, 474 F.2d 522 (2d Cir.1973) (28 months); United States v. Fasanaro, 471 F.2d 717 (2d Cir.1973) (over 4 years); United States v. Saglimbene, 471 F.2d 16 (2d Cir.), cert. denied, 411 U.S. 966 (1973) (6 years); United States v. Schwartz, 464 F.2d 499 (2d Cir.), cert. denied, 409 U.S. 1009 (1972) (4½ years); see also Barker v. Wingo, 407 U.S. 514 (1972) (5 years); United States v. Solomon, No. 95 CR. 154 (LAP), 1996 WL 399814, at *4 (S.D.N.Y. July 16, 1996) (finding that 20 months was not "uncommonly long" and "only barely stretches beyond the bare minimum needed to trigger judicial examination of the claim."). The defendant has failed to supply any case in his supplemental motion that opposes this litany of examples.[2]

Nor has the defendant suffered legitimate prejudice. The defendant's pretrial incarceration is far short of being "oppressive" as he been in custody for less than 6 months. Anxiety and concern cannot be argued as he was entirely unaware of the indictment. The defendant's lone original argument regarding prejudice was that he would have been able to prepare better if he had not been in custody. The government already argued how this was

---

[2] Notably, the defendant cites United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir. 1992) for the proposition that "any delay in excess of eight months constitutes 'presumptive prejudice'." Doc 19-1 at 16. First, that is not what Vassell actually says. In fact, the Court in Vassell expressly declines to address whether the seven-month delay between arraignment and trial was presumptively prejudicial because the defendant could not succeed under Barker no matter what. This case is merely another example in support of the government's position.

the sort of speculative and generalized claim that short of establishing the particularized showing of prejudice required.  United States v. Moreno, 789 F.3d 72, 81 (2d Cir. 2015).  See also United States v. Smith, 277 F. Supp. 3d 405, 418 (W.D.N.Y. 2016) ("Defendant's generalized claims fall short of establishing "a particularized showing of prejudice.").  In his supplemental motion, the defendant admits that he cannot argue he suffered from oppressive pretrial incarceration and anxiety.  Doc. 19-1 at 20.  Rather than proffer any basis of prejudice, the defendant merely laments that the government "let this case sit until the pandemic became less of an issue.  How convenient."  Id. at 21.  It is unclear precisely what the defendant intends to suggest by this claim.  But it has nothing to do with prejudice under the fourth prong of Barker.  The supplemental motion offers no further support for the claim of prejudice.

Despite all of this establishing that the defendant's discovery claims are immaterial, the government now endeavors to respond to each of the defendant's specific requests for additional discovery:

a. **Copies of any report(s) documenting efforts of the United States Government ("USG") to obtain custody/extradition of Mr. Assi from the Government of Canada, to include any attempts by USG authorities to locate Mr. Assi in Canada or elsewhere, to include by running internet searches, credit checks, interviewing parents, relatives, and friends, etc.**

There are no reports documenting efforts of the United States Government to obtain custody/extradition of the defendant.  The government is aware of RCMP surveillance on the defendant and had knowledge of his place of residence.  While aware of the investigation, the RCMP investigation was separate from the HSI investigation of the defendant.

    b.    **<u>Copies of any communications between the USG and the Government of Canada discussing extradition of Mr. Assi to the United States of America, to include any requests for extradition and/or the location of Mr. Assi.  Please note that this request asks for the specific information the USG provided the Government of Canada and its authorities regarding Mr. Assi, to include his name, date of birth, last know address, last known telephone number, last known email address, last known occupation, and/or Mr. Assi's associates/accomplices.</u>**

There are no written communications between the United States Government and Canada discussing extradition of the defendant.  The U.S. Government did have information about the defendant including the defendant's last known address and prior telephone numbers.  This information was obtained from Canadian authorities.

    c.    **<u>Copies of any filing or notices submitted by the USG to Interpol, TECS, NCIC, regarding the charges in this matter</u>**

As noted above, the government has now provided to the defendant the notices submitted to TECS and NCIC.

    d.    **<u>Copies of any provisional arrest warrant(s) filed by the USG in Canada regarding Mr. Assi and the charges in this matter</u>**

There was no provisional arrest warrant filed in Canada in this matter.

    e.    **<u>The name(s) and agency(ies) of any law enforcement authority tasked with locating and/or extraditing Mr. Assi</u>**

No agency was tasked with locating or extraditing the defendant as extradition had not yet been sought.

f. **A copy of the letter to [AUSA Adler] from Department of Justice's Office of International Affairs regarding extradition in Mr. Assi's case**

Extradition was not sought.  Such information would otherwise be explicitly excluded from discovery.  See Fed. R. Crim. P. 16(a)(2).

g. **Copies of any interagency and intra-agency messages/correspondence/ communications within the Department of Justice ("DOJ") (and any of the subordinate agencies that report to DOJ) and between DOJ and any other federal, state, local, or international law enforcement agency as well as the United States Department of State (and any of its embassies and consular offices), the Department of Homeland Security (and any of the subordinate agencies that report to DHS) regarding Mr. Assi and the USG's efforts to locate, arrest and extradite Mr. Assi**

Such information is explicitly excluded from discovery.  See Fed. R. Crim. P. 16(a)(2).

h. **A copy of the extradition treaty between the USG and the Government of Canada in effect in 2019 to present**

As noted above, the government has provided this treaty to the defendant.

i. **Copies of any DOJ memoranda or internal memoranda within the USAO-WDNY discussing the impact of COVID-19 on international extradition efforts in Canada and how DOJ personnel should respond to these impacts, to include whether to delay the filing of an indictment**

Such information, if it even exists, would also be explicitly excluded from discovery. See Fed. R. Crim. P. 16(a)(2).

In summary, the government has fully complied with the defendant's requests for additional discovery, even though such requests would not otherwise have been proper under Rule 16.  For these reasons, the defendant's motion should be denied, or otherwise deemed

9

moot.  Moreover, the defendant's original motion to dismiss the Indictment for a constitutional speedy trial should be denied.

B.     **MOTION FOR INFORMATION REGARDING GRAND JURY**

Contained within the defendant's supplemental motion is a request for disclosure of information regarding the grand jury proceeding that led to the defendant's Indictment. Specifically, the defendant requests dates of activity in the Grand Jury and periods of delay in the Grand Jury due to COVID-19. Id. at 12.  The defendant also requests "the reasons the Magistrate sealed the indictment on August 27, 2020." Id.  The defendant claims that these materials are "necessary to defend against an injustice." Id.  Although the defendant cites general law regarding the secrecy of grand jury proceedings, he fails to cite any authority that justifies these highly unusual requests.

The defendant is not entitled to a list of reasons from a Magistrate Judge as to why the Indictment was sealed.  A magistrate judge may direct that the indictment be kept secret until the defendant is in custody under the authority of Fed. R. Crim. P 6(e)(4).  The Second Circuit has long held that this is a ministerial act that requires no justification.

> The parties generally involved in sealing an indictment—the Magistrate and the United States Attorney—recognize the dangers of a prematurely disclosed indictment and operate with them in mind. The Magistrate here obviously so acted and needed no detailed statement of the reasons why the United States wished to have the indictment sealed.

United States v. Srulowitz, 819 F.2d 37, 41 (2d Cir. 1987).  The Court in Srulowitz went on to further specify "**we see no need for the United States Attorney to do more in the first instance than to make a request that the indictment be sealed. A simple request for secrecy**

**by the prosecutor, whether recorded or unrecorded, is sufficient to invoke the Magistrate's authority to direct sealing.**" Id. (emphasis added). The defendant's request has no authority in law and should be denied.

The defendant's additional requests regarding his desire for various dates involving grand jury proceedings are likewise lacking in any legal authority. The defendant was not charged by a criminal complaint. He suffered no delay under the Speedy Trial Act. The amount of time the government took to investigate and make a charging decision is immaterial. In United States v. Lovasco, 431 U.S. 783 (1977), the Supreme Court discussed at length the process that a prosecutor must go through before deciding whether to charge an individual with a crime:

> It requires no extended argument to establish that prosecutors do not deviate from "fundamental conceptions of justice" when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt. To impose such a duty "would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself," United States v. Ewell, [383 U.S. 116, 120 (1966)]. From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried. These costs are by no means insubstantial since, as we recognized in Marion, a formal accusation may "interfere with the defendant's liberty, . . . disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." 404 U.S., at 320, 92 S. Ct., at 463. From the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is equally unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited. And from the standpoint of the courts, such a requirement is unwise because it would cause scarce resources to be consumed on cases that

prove to be insubstantial, or that involve only some of the responsible parties or some of the criminal acts. Thus, no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so.

It might be argued that once the Government has assembled sufficient evidence to prove guilt beyond a reasonable doubt, it should be constitutionally required to file charges promptly, even if its investigation of the entire criminal transaction is not complete. Adopting such a rule, however, would have many of the same consequences as adopting a rule requiring immediate prosecution upon probable cause.

First, compelling a prosecutor to file public charges as soon as the requisite proof has been developed against one participant on one charge would cause numerous problems in those cases in which a criminal transaction involves more than one person or more than one illegal act. In some instances, an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing lawbreakers to justice. In other cases, the prosecutor would be able to obtain additional indictments despite an early prosecution, but the necessary result would be multiple trials involving a single set of facts. Such trials place needless burdens on defendants, law enforcement officials, and courts.

Second, insisting on immediate prosecution once sufficient evidence is developed to obtain a conviction would pressure prosecutors into resolving doubtful cases in favor of early and possibly unwarranted prosecutions. The determination of when the evidence available to the prosecution is sufficient to obtain a conviction is seldom clear-cut, and reasonable persons often will reach conflicting conclusions.

Finally, requiring the Government to make charging decisions immediately upon assembling evidence sufficient to establish guilt would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases. The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the Government's case, in order to determine whether prosecution would be in the public interest. Prosecutors often need more information than proof of a suspect's guilt, therefore, before deciding whether to seek an indictment.

Id. at 790-94 (footnotes omitted).[3]

---

[3] In Lovasco, the Supreme Court also recognized that courts should not determine when charges should be filed: "[I]f courts were required to decide in every case when the prosecution should have commenced, it would be necessary for them to trace the day-by-day progress of each investigation.

Even if there was some legal basis for the requested information, the defendant's request has no bearing on any factor involving speedy trial. The defendant does not have a right to a "speedy investigation" beyond the existence of a statute of limitations. As noted before, the statute of limitations still has not elapsed in this matter. The defendant's claims must be denied.

### C. CLAIM THAT THE INDICTMENT WAS IMPROPERLY SEALED

The defendant argues again that the "government (or the Court) had no reason to seal this indictment in August 2020." Doc 19-1 at 13. As noted above, this argument has no basis in law. It is understandable why the defendant would emphasize this claim. Because the Barker analysis is only triggered by the unsealing of a sealed indictment, the defendant must attempt to attack the sealing in order for his other arguments to be considered at all. However, because neither the government nor the Court must specify a basis for sealing, the defendant's claim must fail. Srulowitz, 819 F.2d at 41.

### CONCLUSION

The government has supplied the defendant with documents in a good faith attempt to respond to his claims. However, the defendant has no basis for the additional "discovery" he seeks. Nor does the supplemental motion provide further rationale to justify a Barker analysis. Ultimately, a mere 1 day elapsed between the unsealing of the Indictment and the

---

Maintaining daily records would impose an administrative burden on prosecutors, and reviewing them would place an even greater burden on the courts." Lovasco, 431 U.S. at 793 n.14.

defendant's arrest. The government respectfully requests that the Court deny the defendant's supplemental motion.

DATED: Buffalo, New York, October 7, 2022.

       TRINI E. ROSS
       United States Attorney


BY:  s/MICHAEL J. ADLER
    Assistant United States Attorney
    United States Attorney's Office
    Western District of New York
    138 Delaware Avenue
    Buffalo, New York 14202
    (716) 843-5857
    Michael.Adler@usdoj.gov